FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **CHAD PARKER, ET AL.** | |
| **Plaintiffs** | **No. 1:20-CV-1601-JEJ** |
| **v.** | *Complaint Filed 9/3/20* |
| **TOM WOLF, ET AL.,** | *Electronically Filed Document* |
| **Defendants** | |

## DEFENDANTS' BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

Respectfully submitted,

JOSH SHAPIRO
Attorney General

BY:   KELI M. NEARY
Executive Deputy Attorney General
Director, Civil Law Division

KAREN M. ROMANO
Chief Deputy Attorney General
Chief, Civil Litigation Section

NICOLE J. BOLAND
Deputy Attorney General

Office of Attorney General
15th Floor, Strawberry Square
Harrisburg, PA 17120
Phone: (717) 787-2717
kneary@attorneygeneral.gov
kromano@attorneygeneral.gov
nboland@attorneygeneral.gov

DATE:  October 23, 2020

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................. ii

INTRODUCTION ........................................................................7

STATEMENT OF QUESTIONS INVOLVED....................................9

ARGUMENT .............................................................................9

    I.    PLAINTIFFS CANNOT ESTABLISH A LIKELIHOOD OF SUCCESS ON THE MERITS. ..........................................11

        A.    The Commonwealth's Contact Tracing Program is Constitutional ...................................................12

            1. The contact tracing program does not violate Plaintiffs' freedom of association. .......................................12

            2. Plaintiffs have not stated a claim for a substantive due process violation....................................16

            3. The contact tracing program does not effect an unlawful seizure. .......................................20

        B.    The Mask Mandate Is Constitutional.......................21

            1. The mask mandate does not infringe upon Plaintiffs' freedom of speech because the orders are content-neutral and issued in furtherance of a substantial governmental interest ...............22

            2. Masks do not violate Plaintiffs' right to privacy. .................24

        C.    Plaintiffs' Claims Against the Attorney General Fail Due to Lack of Personal Involvement ..................................26

    II.    PLAINTIFFS CANNOT DEMONSTRATE THEY ARE LIKELY TO SUFFER IRREPABLE HARM IF RELIEF IS NOT GRANTED .....27

    III.    THE BALANCE OF THE HARMS AND THE PUBLIC INTEREST WEIGH AGAINST A PRELIMINARY INJUNCTION....................29

CONCLUSION.......................................................................31

WORD COUNT CERTIFICATION ......................................32

i

# TABLE OF AUTHORITIES

**Cases**

*Addlespurger v. Corbett*, 461 F. App'x 82 (3d Cir. 2012) .....................................25

*Albright v. Oliver*, 510 U.S. 266 (1994) ...................................................15

*Allegheny Energy, Inc. v. DQE, Inc.,* 171 F.3d 153 (3d Cir.1999) ..........................8

*Amoco Production Co.,* 480 U.S., at 542, 107 S.Ct. 1396.....................................28

*Ass'n of New Jersey Rifle & Pistol Clubs, Inc. v. Attorney Gen. New Jersey*, 910 F.3d 106 (3d Cir. 2018)...................................................................9, 27

*Benner v. Wolf,* No. 20-cv-775, 2020 WL 2564920  (M.D. Pa., May 21, 2010) .. 17, 21

*Bruni v. City of Pittsburgh*, 824 F.3d 353 (3d Cir. 2016)........................................15

*City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41 (1986) ...............................20

*Collins v. City of Harker Heights, Tex.*, 503 U.S. 115 (1992)................................15

*Continental Group, Inc. v. Amoco Chemicals Corp.,* 614 F.2d 351, 359 (3d Cir.1980) ...............................................................................26

*Corp. Synergies Grp., LLC v. Andrews*, 775 F. App'x 54, 58 (3d Cir. 2019) ...........7

*Desi's Pizza, Inc. v. City of Wilkes-Barre,* 321 F.3d 411 (3d Cir. 2003) ...............15

*District of Columbia v. Brooke,* 214 U.S. 138 (1909)...........................................18

*Dombrowski v. Pfister,* 380 U.S. 479 (1965)..........................................................26

*ECRI v. McGraw-Hill, Inc.*, 809 F.2d 223, 226 (3d Cir. 1987)........................ 25, 26

*Employees v. Missouri Public Health & Welfare Dep't,* 411 U.S. 279, 294 (1973) ................................................................................................10

*Evancho v. Fisher*, 423 F.3d 347 (3d Cir., 2005) ....................................................24

*Friends of Danny DeVito v. Wolf*, 227 A.3d 872, 892 (Pa. 2020), *cert denied, ___
   S.Ct. ___*, 20 WL 5882242 (Mem) ....................................................10

*Glasco v. Hills,* 558 F.2d 179, 181 (3d Cir. 1977) ................................................26

*Gonzales v. O Centro Espirita Beneficente Uniao de Vegetal*, 546 U.S. 418, 429
   (2006) ....................................................................................9

*Grace United Methodist Church v. City of Cheyenne,* 451 F.3d 643 (10th Cir. 2006)
   ..........................................................................................12

*Hill v. Colorado*, 530 U.S. 703 (2000) ..............................................................21

*Hillsborough Cty. v. Automated Med. Laboratories, Inc.*,
   471 U.S 707 (1985)......................................................................19

*Hohe v. Casey*,
   868 F.2d 69 (3d. Cir. 1989).............................................................26

*Jacobson v. Massachusetts*, 197 U.S. 11, 26 (1905) ..............................................17

*Johnson v. Ogershok*, No. 4:CV-02-1525, 2003 WL 24221182, at *2 (M.D. Pa.
   May 19, 2003)............................................................................9

*Kirk v. Roan*, No. 1:04-cv-1990, 2006 WL 2645154 (M.D. Pa., Sept. 14, 2006)...24

*Knight v. Lowry*, No. 3:CV-10-2168, 2012 WL 750910 (M.D. Pa., March 8, 2012)
   ..........................................................................................25

*Lane v. New Jersey*, 725 F. App'x 185, 187 (3d Cir. 2018)....................................8

*Lyng v. Int'l Union, et al.,* 485 U.S. 360 (1988) ....................................................13

*Machovec v. Palm Beach County*, No. 20-6920 (Palm Beach Cnty, July 27, 2020)
   ..........................................................................................24

*Madison Square Garden Corp. v. Braddock*, 90 F.2d 924, 927 (3d Cir. 1937)........7

*Moore v. Mann*, No. 3:CV-13-2771, 2014 WL 3893903, at *2 (M.D. Pa. Aug. 7,
   2014) ....................................................................................26

*Mraz v. Cty. of Lehigh*, 862 F. Supp. 1344 (E.D. Pa. 1994)...................................23

*Nat'l Ass'n for Advancement of Colored People v. State of Ala. ex rel. Patterson*, 357 U.S. 449 (1958)............................................................................13

*Nicholas v. Pennsylvania State University*, 227 F.3d 133 (3d Cir. 2000)..............15

*Nixon v. Administrator of Gen. Servs.,* 433 U.S. 425 (1977) ..................................23

*Norfolk S. Corp. v. Oberly*, 594 F. Supp. 514, 519 (D. Del. 1984) ..........................7

*Pennhurst State School & Hospital, et al. v. Halderman, et al,* 104 S.Ct. 900, 919 (1984) .................................................................................10

*Pi Lambda Phi Fraternity, Inc. v. Univ. of Pittsburgh,* 229 F.3d 435, 442 (3d Cir.2000) ................................................................................13

*Punnett v. Carter*, 621 F.2d 578, 582 (3d Cir. 1980) ................................................8

*Ransom v. Marazzo*, 848 F.2d 398 (3d Cir. 1988)...................................................15

*Reilly v. City of Harrisburg*, 858 F.3d 173 (3d Cir. 2017) ........................................8

*Reno v. Flores*, 507 U.S. 292 (1993) .......................................................................15

*Rizzo v. Goode*, 423 U.S. 362 (1976).......................................................................25

*Rode v. Dellarciprete*, 845 F.2d 1195 (3d Cir. 1988)...................................... 24, 25

*Scheetz v. The Morning Call, Inc.,* 946 F.2d 202 (3d Cir.1991), *cert. denied,* 112 S.Ct. 1171 (U.S. 1992).........................................................................23

*Schlesinger v. Carlson*, 489 F. Supp. 612, 619 (M.D. Pa. 1980) .............................8

*Singer Mgmt. Consultants, Inc. v. Milgram*, 650 F.3d 223, 229 (3d Cir. 2011) .......9

*Sutton v. Cerullo*, No. 3:CV-10-1899, 2014 WL 3900235, at *5 (M.D. Pa. Aug. 8, 2014) ...................................................................................9

*Tacynec v. City of Philadelphia*, 687 F.2d 793 (3d Cir. 1982)................................12

*Tenafly Eruv Assoc. v. Borough of Tenafly*, 309 F. 3d 144 (3d Cir. 2002) ..............8

*U.S. v. O'Brien*, 391 U.S. 367 (1968)......................................................................22

*United States v. Westinghouse Elec. Corp.,* 638 F.2d 570 (3d Cir.1980) ...............23

*Walker v. City of Kansas City,* 911 F.2d 80 (8th Cir. 1990).....................................12

*Ward v. Rock Against Racism*, 491 U.S. 781 (1989)................................................21

*Washington v. Glucksberg*, 521 U.S. 702 (1997) ....................................................15

*Whalen v. Roe,* 429 U.S. 589 (1977) ......................................................................23

*Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008)................................28

*Wooley v. Maynard*, 430 U.S. 705 (1977) ..............................................................22

## Statutes

35 P.S. 521.1 ...........................................................................................................19
35 Pa. C.S. § 7101...................................................................................................19
71 P.S. § 1403 .........................................................................................................19
71 P.S. § 532 ...........................................................................................................19

## Constitutional Provisions

U.S. Const. amend. I ...............................................................................................20
U.S. Const. amend. XIV, § 1 ..................................................................................15

## Other Authorities

"Contact Tracing," Website of the Department of Health,
    https://www.health.pa.gov/topics/disease/coronavirus/Pages/Contact-
    Tracing.aspx. ......................................................................................................11

"COVID-19 Data for Pennsylvania," Pa. Dept. of Health,
    https://www.health.pa.gov/topics/disease/coronavirus/Pages/Coronavirus.aspx..6

"What Phase Is My County In?", Website of the Office of the Governor,
    https://www.pa.gov/guides/responding-to-covid-19/#WhatPhaseIsMyCountyin.6

https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/prevention.html
    ............................................................................................................................21

Thomas Wm. Mayo, Wendi Campbell Rogaliner, and Elicia Grilley Green, "'To Shield Thee From Diseases of the World': The Past, Present, and Possible Future of Immunization Policy," 13 J. Health & Life Sci. L. 3, 9 (Feb. 2020)...16

## INTRODUCTION

In the winter of 2020, a global pandemic known as COVID-19 reached the Commonwealth, threatening the health and lives of its residents. In response, Governor Wolf and Secretary Levine acted swiftly to limit the damage and spread of the disease, issuing stay-at-home orders and temporarily shuttering the physical locations of businesses that are not life-sustaining. It worked; as winter became spring and spring became summer, Pennsylvania saw the numbers of COVID-19 cases and deaths fall.

Early on in the pandemic, the Pennsylvania Department of Health instituted a case investigation and contact tracing program to reduce the spread of COVID-19. Doc. 1, ¶30. Testing and case investigations allow for quick identification of infected individuals and contact tracing identifies those they had contact with to inform individuals and public health officials of possible exposure to the virus. Contact tracing is a content-neutral program intended to eradicate deadly disease. Without contract tracing, many more Pennsylvanians will die. With contract tracing, lives are being saved every day.

As of July 3, all counties are in the "green" phase of the Commonwealth's reopening plan and the stay-at-home and Business Closure Orders have been suspended "to allow the economy to strategically reopen while continuing to

prioritize public health."[1] Despite this, the virus continues to infect hundreds—and in recent weeks thousands—of Pennsylvanians every day.[2]  In an effort to allow our economy to remain open while still preventing the spread of the virus, on July 1, 2020, Secretary Levine issued an order requiring universal face coverings.  Doc. 1-2. The Secretary's mask mandate is content neutral because it does not advance any political or ideological message and it is generally applicable because the requirements for masking are not based upon any suspect classifications. Plaintiffs' cannot rebut the overwhelming evidence that universal masking is proven to save lives.

Plaintiffs come to this Court seeking to enjoin universally applied health mandates because they disagree with this policy. Such a disagreement does not provide a valid basis for a court to override the Commonwealth's exercise of police powers. Accordingly, Plaintiffs' motion should be denied.

---

[1]     "What Phase Is My County In?", Website of the Office of the Governor, https://www.pa.gov/guides/responding-to-covid-19/#WhatPhaseIsMyCountyin (last visited 10/22/20).
[2]     "COVID-19 Data for Pennsylvania," Pa. Dept. of Health, https://www.health.pa.gov/topics/disease/coronavirus/Pages/Coronavirus.aspx (last visited 10/22/20).

## STATEMENT OF QUESTIONS INVOLVED

I.    CAN PLAINTIFFS ESTABLISH A LIKELIHOOD OF SUCCESS ON THE MERITS?

*Suggested Response:  No.*

II.   CAN PLAINTIFFS ESTABLISH A LIKELIHOOD OF IRREPARABLE HARM?

*Suggested Response:  No.*

III.  DO THE BALANCE OF THE HARMS AND THE PUBLIC INTEREST WEIGH IN FAVOR OF PLAINTIFFS?

*Suggested Response:  No.*

## ARGUMENT

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Corp. Synergies Grp., LLC v. Andrews*, 775 F. App'x 54, 58 (3d Cir. 2019). "It has been well stated that upon an application for a preliminary injunction to doubt is to deny." *Madison Square Garden Corp. v. Braddock*, 90 F.2d 924, 927 (3d Cir. 1937). Indeed, "[t]here is no power . . . which requires greater caution, deliberation, and sound discretion, or more dangerous in a doubtful case, than the issuing [of] an injunction; it is the strong arm of equity, that never ought to be extended unless to cases of great injury[.] . . . ." *Norfolk S. Corp. v. Oberly*, 594 F. Supp. 514, 519 (D. Del. 1984).

"Generally, a temporary restraining order or preliminary injunction is issued to maintain the status quo." *Schlesinger v. Carlson*, 489 F. Supp. 612, 619 (M.D. Pa. 1980). Here, Plaintiffs seek to upend it. Where the requested preliminary injunctive relief "is directed not merely at preserving the *status quo* but . . . at providing mandatory relief, the burden on the moving party is particularly heavy." *Punnett v. Carter*, 621 F.2d 578, 582 (3d Cir. 1980); *see also Lane v. New Jersey*, 725 F. App'x 185, 187 (3d Cir. 2018).

To obtain a preliminary injunction, Plaintiffs have the burden of proving: "(1) a likelihood of success on the merits; (2) that [they] will suffer irreparable harm if the injunction is denied; (3) that granting preliminary relief will not result in even greater harm to the nonmoving party; and (4) that the public interest favors such relief." *Allegheny Energy, Inc. v. DQE, Inc.,* 171 F.3d 153, 158 (3d Cir.1999). The movant must establish the likelihood of success on the merits of its causes of action and the likelihood that it will suffer irreparable injury if the requested relief is not granted before the court can even consider public interest and the balance of hardships. *Tenafly Eruv Assoc. v. Borough of Tenafly*, 309 F. 3d 144 (3d Cir. 2002); *Reilly v. City of Harrisburg*, 858 F.3d 173, 179 (3d Cir. 2017), *as amended* (June 26, 2017). "The power to issue a temporary restraining order or an injunction should be used sparingly and relief should not be granted except in those rare instances in which the law, the facts, and equities are clearly in the moving party's favor."

*Johnson v. Ogershok*, No. 4:CV-02-1525, 2003 WL 24221182, at *2 (M.D. Pa. May 19, 2003).

Plaintiffs cannot satisfy any element requisite to obtaining injunctive relief, nor do the equities weigh in their favor. Their motion must be denied.

## I.    PLAINTIFFS CANNOT ESTABLISH A LIKELIHOOD OF SUCCESS ON THE MERITS.

"To establish a reasonable probability of success on the merits, the moving party must produce sufficient evidence to satisfy the essential elements of the underlying cause of action." *Sutton v. Cerullo*, No. 3:CV-10-1899, 2014 WL 3900235, at *5 (M.D. Pa. Aug. 8, 2014); *see also Singer Mgmt. Consultants, Inc. v. Milgram*, 650 F.3d 223, 229 (3d Cir. 2011). The burdens of proof as to the substantive merits of a claim "track the burdens at trial." *Gonzales v. O Centro Espirita Beneficente Uniao de Vegetal*, 546 U.S. 418, 429 (2006). A failure to establish a likelihood of success on the merits "necessarily result[s] in the denial of a preliminary injunction." *Ass'n of New Jersey Rifle & Pistol Clubs, Inc. v. Attorney Gen. New Jersey*, 910 F.3d 106, 115 (3d Cir. 2018).

Here, Plaintiffs cannot establish that they are likely to succeed on the merits on any of their claims. The Supreme Court of Pennsylvania has already determined that the power vested in the Governor by the General Assembly was "firmly grounded" in the Commonwealth's inherent police power to promote public health and safety, and that the protection of millions of Pennsylvanians from a deadly

pandemic was the "sine qua non of a proper exercise of police power." *Friends of Danny DeVito v. Wolf*, 227 A.3d 872, 892 (Pa. 2020), *cert denied,* ___ S.Ct. ___, 20 WL 5882242 (Mem).

Moreover, it is well settled that under the Eleventh Amendment to the United States Constitution, "an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another state." *Employees v. Missouri Public Health & Welfare Dep't,* 411 U.S. 279, 294 (1973). No basis of jurisdiction, including pendant jurisdiction, may override the Eleventh Amendment. *Pennhurst State School & Hospital, et al. v. Halderman, et al,* 104 S.Ct. 900, 919 (1984). In *Pennhurst,* the U.S. Supreme Court considered the application of the Eleventh Amendment in claims brought against state officials and held "a claim that state officials violated state law in carrying out their official responsibilities is a claim against the State that is protected by the Eleventh Amendment." *Id.* at 903.

Plaintiffs' challenges have no merit as a matter of law. Therefore, Plaintiffs' motion for a preliminary injunction must be denied.

**A.     The Commonwealth's Contact Tracing Program is Constitutional**

1.     The contact tracing program does not violate Plaintiffs' freedom of association**.**

Despite Plaintiffs' assertions to the contrary, there is no actionable burden associated with contact tracing. Contact tracing "is the process of identifying, notifying, and monitoring anyone who came in close contact with an individual who

tested positive for COVID-19 while they were infectious. . . .” *See* “Contact Tracing,” Website of the Department of Health, https://www.health.pa.gov/topics/disease/coronavirus/Pages/Contact-Tracing.aspx. The program applies equally to all Pennsylvanians exposed to COVID-19. It is not specific to any group nor is it motivated by any discriminatory intent. It does not stop people from choosing with whom they associate nor does it punish people based upon with whom they interact or prevent people from calling friends or family. It is not used as a tool to retaliate on the basis of speech or affiliation. Contact tracing is not targeted to disassociating people; rather, it is a content-neutral program intended to save lives and eradicate a deadly disease.

The contours of Plaintiffs' “Right to Association” theory are unclear. Plaintiffs do not allege, because they cannot allege, that the Commonwealth is, at all, impeding their ongoing ability to associate with anyone. They do not claim that contact tracing prevents them from joining an organization or interacting with any particular group, nor do they assert that the program substantially interferes with any “intimate” relationship. Rather, the bases of their claim appear to be that the contact tracing program requires disclosures of a person's whereabouts while potentially exposed, and that those who test positive and who are close contacts of those who tested positive cannot freely interact in-person with the public for two weeks

13

following the results. But these practical and lifesaving efforts are not actionable as a violation of the right to association.

"As in the area of freedom of expression, an individual's right of association may be limited by valid, content-neutral time, place and manner restrictions enacted by the state." *Tacynec v. City of Philadelphia*, 687 F.2d 793, 799–800 (3d Cir. 1982) (citing *Healy v. James*, 408 U.S. 169 (1972)). It is well established that a state may establish "reasonable time, place and manner restrictions… even though those rules might indirectly burden [an individual's] freedom of association." *Id.*; *see also Grace United Methodist Church v. City of Cheyenne,* 451 F.3d 643, 658 (10th Cir. 2006) (the right of assembly and expressive association are " 'no more absolute than the right of free speech or any other right; consequently there may be countervailing principles that prevail over the right of association'") (quoting *Walker v. City of Kansas City,* 911 F.2d 80, 89 n. 11 (8th Cir. 1990)).   Thus, even if Plaintiffs' claim did implicate their freedom of association rights, which it does not, the claim still fails because the Commonwealth's interest in saving lives outweighs Plaintiffs' lamentations. The Commonwealth may establish reasonable time, place and manner restrictions even if there is an indirect burden on the freedom of association.   The contact tracing program is reasonable because it is a bona fide method to prevent the spread of infectious disease by identifying those infected and isolating the disease

until the threat to the public has passed. The contact tracing program is reasonable because it saves lives.[3]

Plaintiffs rely upon *Nat'l Ass'n for Advancement of Colored People v. State of Ala. ex rel. Patterson*, 357 U.S. 449 (1958), to support their claim, but their reliance on the case is misplaced. The *NAACP* case involved an effort by the Alabama Attorney General to oust the NAACP from the state. The Attorney General contended that the NAACP was not statutorily authorized to operate in the state, and demanded all of the organization's papers, including its membership lists. Ultimately, the Supreme Court ruled that the "[c]ompelled disclosure of membership in an organization engaged in advocacy of particular beliefs," in that particular case, violated the plaintiffs' right to "privacy in group association." *Id.* at 462-63. The Court so ruled because of the "uncontroverted showing that on past occasions revelation of the identity of its rank-and-file members has exposed these members to economic reprisal, loss of employment, threat of physical coercion, and other

---

[3]     The First Amendment also protects the right of "intimate association" that "involves an individual's right to enter into and maintain intimate or private relationships free of state intrusion." *Pi Lambda Phi Fraternity, Inc. v. Univ. of Pittsburgh,* 229 F.3d 435, 442 (3d Cir. 2000). To make out a violation of this right, a plaintiff must show that the challenged action "directly and substantially interfered with" a protected relationship. *See Lyng v. Int'l Union, et al.,* 485 U.S. 360, 365 (1988). No such claim has been stated in this case. Plaintiffs have pled no substantial interference with any relationship. Persons involved in the contact tracing program are free to associate with whomever they chose, outside of the quarantine period, so long as they are not inflicted with COVID-19.

manifestations of public hostility." *Id.* Thus, disclosure of membership lists would cause a "likelihood of substantial restraint" on the exercise of the right to freedom of association because it may "induce members to withdraw from the Association and dissuade others from joining it because of fear of exposure of their beliefs shown through their associations." *Id.*

The egregious facts of *NAACP* are wholly inapposite to the present matter. *NAACP* involved the right to association with an advocacy group. Here, there are no facts indicating that Plaintiffs are, or were, being dissuaded from membership in a group or organization. They do not even identify, in the first instance, a particular association between themselves or others that is purportedly in jeopardy. At best, Plaintiffs appear to complain that the Commonwealth will be generally aware of the people with whom they interacted while exposed, and that they must isolate for fourteen (14) days following a positive test or quarantine for fourteen days following exposure. A right to freely and privately interact with the public while potentially harboring a deadly virus is not established in the law, in *NAACP* or otherwise.

For these reasons, Plaintiffs have failed to show a likelihood of success on the merits on their "Right to Association" claim.

> 2. Plaintiffs have not stated a claim for a substantive due process violation.

As an initial matter, "the [Supreme] Court has always been reluctant to expand the concept of substantive due process because guideposts for responsible decision

making in this uncharted area are scarce and open-ended." *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 125 (1992). *Accord Washington v. Glucksberg*, 521 U.S. 702, 720 (1997). "Where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims." *Bruni v. City of Pittsburgh*, 824 F.3d 353, 374-75 (3d Cir. 2016) (quoting *Albright v. Oliver*, 510 U.S. 266, 273 (1994)). Put simply, Plaintiffs' invocation of multiple particular constitutional amendments necessarily dooms their stand-alone substantive due process claim.

Even if the Court considers Plaintiffs' substantive due process claim, the claim still fails. "Substantive due process refers to and protects *federal* rights." *Ransom v. Marazzo*, 848 F.2d 398, 411 (3d Cir. 1988) (emphasis added). That being so, the analysis of any substantive due process claim "must begin with a careful description of the asserted right[.]" *Reno v. Flores*, 507 U.S. 292, 302 (1993). To be protected, the "asserted right" must be "fundamental"—arising from the Constitution itself, and not from state law. *Id. See also Desi's Pizza, Inc. v. City of Wilkes-Barre,* 321 F.3d 411, 427 (3d Cir. 2003); *Nicholas v. Pennsylvania State University*, 227 F.3d 133, 140-42 (3d Cir. 2000).

Although not expressly identified, Plaintiffs appear to plead an impairment of their *liberty* interests. *See* U.S. Const. amend. XIV, § 1 ("nor shall any State deprive

17

any person of life, liberty or property without due process of law"). Even if Plaintiffs stated a claim for liberty interests, those interests are not absolute. The "liberty secured by the Constitution . . . does not import an absolute right in each person to be, at all times and in all circumstances, wholly free from restraint." *Jacobson v. Massachusetts*, 197 U.S. 11, 26 (1905). Under such an absolutist position, liberty itself would be extinguished:

> There are manifold restraints to which every person is necessarily subject for the common good. On any other basis organized society could not exist with safety to its members. . . . Real liberty for all could not exist under the operation of a principle which recognizes the right of each individual person to use his own, whether in respect of his person or his property, regardless of the injury that may be done to others.

*Id.* Legal commentators have recognized the Court's central point: "[u]nbridled individual liberty eventually clashes with the liberty interests of others, and without some legal constraints, '[r]eal liberty for all could not exist.'" Thomas Wm. Mayo, Wendi Campbell Rogaliner, and Elicia Grilley Green, "'To Shield Thee From Diseases of the World': The Past, Present, and Possible Future of Immunization Policy," 13 J. Health & Life Sci. L. 3, 9 (Feb. 2020) (quoting *Jacobson*, 197 U.S. at 26).

　　　Here, Plaintiffs complain that, due to the contact tracing program and mask mandate, they were unable to continue going about their daily activities as they saw fit despite testing positive for COVID-19.　Likewise, they regret they were not able

to resist efforts to responsibly inform others they may have exposed to the virus. Plaintiffs' argument amounts to nothing more than a policy disagreement.  As this Court has previously stated,

> [i]t is not the place of this Court to question the reasonable motives of elected officials, nor can we grant Petitioners' Motion based largely upon their political disagreements with the same. This Court will not micromanage public policy in the midst of a pandemic. While there is ample basis for pandemic-weary Pennsylvanians to disagree about the means being instituted to fight COVID-19, there is no legal basis for us to enjoin them at this time.

*Benner v. Wolf,* No. 20-cv-775, 2020 WL 2564920, *9 (M.D. Pa., May 21, 2010).

This ruling is supported by Supreme Court jurisprudence. In *Jacobson*, the Supreme Court of the United States rejected a substantive due process challenge to a mandatory vaccination law and recognized the right of a state to "protect itself against an epidemic of disease which threatens the safety of its members." *Jacobson,* 197 U.S. at 27. The Supreme Court noted that it has "refrained from any attempt to define the limits" of the states' power in responding to an epidemic, but noted that "it has distinctly recognized the authority of a state to enact quarantine laws and 'health laws of every description[.]'"*Id.* at 25. The Court then ruled that it will embrace "such *reasonable* regulations" and "will protect the public health and the public safety." *Id.* (emphasis added). The *Jacobson* standard applies to the case at bar. Here, it is reasonable for the Commonwealth to track and stop the spread of disease.

19

Even if strict scrutiny was applied, the Defendants' actions would still pass constitutional muster. Under the strict scrutiny standard, Plaintiffs must make a showing that the Defendants' actions shock the conscience. Far from shocking the conscience, the Defendants' actions are, and always have been, motivated by the purpose of stopping the spread of a deadly virus and saving lives. Plaintiffs have not made *any* allegations to the contrary. Rather, they admit that the Defendants have a "substantial (some would argue compelling) interest in protecting public health against the virus" they just disagree with the Defendants' approach.  Doc. 18, p. 31. This disagreement does not amount to a constitutional violation.

### 3.   The contact tracing program does not effect an unlawful seizure.

Neither the mandatory fourteen-day isolation period following a positive COVID-19 test nor the mandatory fourteen-day quarantine period following close contact with a COVID-19 positive individual  constitute an "unlawful" seizure. The requirements are valid exercises of the Defendants' police powers, as well as their statutory authority.

To be sure, the authority of the states when exercising their police powers is broad and, indeed, "one of the least limitable of the powers of government." *District of Columbia v. Brooke*, 214 U.S. 138, 149 (1909). The protection of the public health, safety, and welfare falls within the traditional scope of a State's police powers. *Hillsborough Cty. v. Automated Med. Laboratories, Inc.*, 471 U.S 707, 719

(1985). The Pennsylvania Supreme Court already determined that Pennsylvania law grants the Governor "broad emergency management powers" when responding to a "disaster," including the power to temporarily close certain businesses. Doc. 1-2 at 18, 27.

The fact that there indisputably exists a worldwide pandemic, and that there have been thousands of deaths caused by the pandemic in the Commonwealth, and that the deaths are ongoing due to the pandemic, is enough to trigger the Defendants' police powers. Requiring a person who has tested positive for an infectious disease, or who has been exposed to an infectious disease, to temporarily isolate or quarantine until the risk of transmission has passed are valid exercises of that authority.

Additionally, isolation and quarantine are statutorily authorized. The Secretary's Order invoked three separate statutory grounds: the Emergency Management Services Code, 35 Pa. C.S. § 7101 *et seq.*; the Disease Prevention and Control Law ("DPCL"), 35 P.S. 521.1 *et seq.*; Sections 532(a) and 1404(a) of the Administrative Code, which outline the powers and responsibility of the Department of Health, 71 P.S. § 532; 71 P.S. § 1403(a), as well as the Department of Health regulations at 28 Pa. Code §§ 27.60-27.68.

For these reasons, the Defendants' actions are not unlawful because they authorized by the law to combat the spread of deadly disease.

**B.    The Mask Mandate Is Constitutional**

1.    <u>The mask mandate does not infringe upon Plaintiffs' freedom of speech because the orders are content-neutral and issued in furtherance of a substantial governmental interest</u>

Plaintiffs' complaints do not implicate the First Amendment. The Commonwealth requiring masks does not advance a political or ideological message—but, rather, attempts to stop the spread of disease. The Commonwealth is not mandating that anyone wear a mask with a message, slogan or statement. The fact that Plaintiffs may question the efficacy of a mask does not render the mask an ideological statement. The mask is equivalent to a seat belt, not a campaign poster. Furthermore, the state has a "countervailing interest sufficiently compelling" to require masks; namely, stopping the spread of the deadly Coronavirus.  According to the CDC, studies indicate that masks stop of the spread of the virus by preventing the expulsion of respiratory droplets.

While the First Amendment generally prohibits states from "abridging the freedom of speech, or of the press[,]" U.S. Const. amend. I, States may place "content-neutral" time, place, and manner regulations on speech "so long as they are designed to serve a substantial governmental interest and do not unreasonably limit alternative avenues of communication." *City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 46-47 (1986). "The principal inquiry in determining content neutrality . . . is whether the government has adopted a regulation of speech because of disagreement with the message it conveys." *Ward v. Rock Against Racism*, 491 U.S.

781, 791 (1989). And "when a content-neutral regulation does not entirely foreclose any means of communication, it may satisfy the tailoring requirement even though it is not the least restrictive or least intrusive means of serving the statutory goal." *Hill v. Colorado*, 530 U.S. 703, 726 (2000).

This Court analyzed a First Amendment challenge to orders that temporarily closed the physical locations of non-life-sustaining businesses in response to the COVID-19 pandemic and held, "[p]rotecting lives is among the most substantial of government interests, and we see no indication whatsoever that the Orders are content-based. They apply equally to all citizens of Pennsylvania and to a great number of non-life sustaining businesses, regardless of message." *Benner,* 2020 WL 2564920 at *8. The same can be said of the Secretary's masking order. According to the CDC, "emerging evidence from clinical and laboratory studies that shows masks reduce the spray of droplets when worn over the nose and mouth. COVID-19 spreads mainly among people who are in close contact with one another (within about 6 feet), so the use of masks is particularly important in settings where people are close to each other or where social distancing is difficult to maintain." https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/prevention.html

Plaintiffs' citation to *Wooley* is unavailing. That case involved a constitutional challenge to a New Hampshire statute making it a crime to obscure the words "Live Free or Die" on state license plates. *Wooley v. Maynard*, 430 U.S. 705, 715–16

(1977). The Supreme Court ultimately ruled that requiring an individual to participate in dissemination of ideological message by displaying it on his private property in manner and for express purpose that it be observed and read by the public was unconstitutional. *Wooley*, 430 U.S. at 705. The Court so ruled because the statute implicated First Amendment protections, as it imposed ideological speech, and also because the state did not have a "countervailing interest sufficiently compelling" to justify the law. *Id.* Particularly, the state did not have a compelling interest in instilling pride and teaching history.

As opposed to *Wooley*, in which the state required its citizens to display a written phrase for civics purposes, there is a life or death purpose behind the masks. Thus, Plaintiff's First Amendment claim against the masks should fail.[4]

2.      Masks do not violate Plaintiffs' right to privacy.

Plaintiffs argue that a mask is an unwanted "medical treatment," and that being required to wear a mask violates their right to privacy. To the extent that such

---

[4]      Plaintiffs' citation to *U.S. v. O'Brien*, 391 U.S. 367 (1968) actually lends in favor of Defendants' position.  In that case, the Supreme Court upheld a statute that prohibited the destruction of draft cards for speech purposes. The Court opined that the rule was necessary to protect the Selective Service program. Here, masks are necessary to stop disease and spread lives.  The *O'Brien* holding demonstrates that even less "essential" actions that implicate speech will be upheld.

a right exists, however, it does not extend to a public health measure like the mask mandate intended to combat the spread of COVID-19.[5]

The right to privacy guaranteed by the Fourteenth Amendment protects some confidential information, including medical reports and personal papers. *Mraz v. Cty. of Lehigh*, 862 F. Supp. 1344, 1349–50 (E.D. Pa. 1994)(internal citations omitted)(citing *United States v. Westinghouse Elec. Corp.,* 638 F.2d 570 (3d Cir.1980); *Nixon v. Administrator of Gen. Servs.,* 433 U.S. 425, 475–558 (1977); *Scheetz v. The Morning Call, Inc.,* 946 F.2d 202, 206 (3d Cir.1991), *cert. denied,* 112 S.Ct. 1171 (U.S. 1992). "The right to privacy extends to ... 'the individual interest in avoiding disclosure of personal matters....' " *Id.* (quoting *Whalen v. Roe,* 429 U.S. 589 (1977)). The right to privacy does not extend to reputation. *Id.*

The wearing of a mask does not implicate personal or confidential matters, just as a seat belt does not trigger matters of privacy. Plaintiffs' attempt to contort the Fourteenth Amendment to support their ideological stance against scientifically supported life-saving measures should be rejected out-of-hand. Further, the wearing of a mask is not a "medical procedure." "In the case of uninfected or asymptomatic individuals, merely wearing a mask does not address any medical malady of the

---

[5]     The mask mandate does not violate an individual's right to privacy any more than laws requiring individuals to wear clothing in public to protect public health.

wearer. Rather, the covering of one's nose and mouth is designed to safeguard other citizens." *Machovec v. Palm Beach County*, No. 20-6920 (Palm Beach Cnty, July 27, 2020) (attached hereto). As stated by a Florida Court who upheld a mask mandate: "[a] mask is no more a 'medical procedure' than putting a Band-Aid on an open wound." *Id.*

Moreover, the Supreme Court, in *Jacobson*, upheld mandatory vaccinations to combat the spread of disease. While not a medical treatment or a medical procedure, the wearing of a mask is a commonsense public health measure that can squarely be analogized to the vaccines in *Jacobson* and are similarly constitutional. They do not trigger or violate a right to privacy, and are constitutional.

## C.   Plaintiffs' Claims Against the Attorney General Fail Due to Lack of Personal Involvement

Under § 1983, a plaintiff must demonstrate that each and every government defendant was personally involved in the alleged wrongdoing. *See Evancho v. Fisher*, 423 F.3d 347 at 353 (3d Cir., 2005); *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). "[A]lleging a mere hypothesis that an individual defendant had personal knowledge or involvement in depriving the plaintiff of his rights is insufficient." *Kirk v. Roan*, No. 1:CV-04-1990, 2006 WL 2645154, at *3 (M.D. Pa., Sept. 14, 2006). Rather, allegations of personal involvement must be made with particularity. *Rode*, 845 F.2d at 1207. Personal involvement cannot be imposed upon a state official based solely on a theory of *respondeat superior*. *See Rizzo v.*

*Goode*, 423 U.S. 362 (1976); *Rode*, 845 F.2d at 1207; *Knight v. Lowry*, No. 3:CV-10-2168, 2012 WL 750910, *6 (M.D. Pa., March 8, 2012). *See also*, *Stafford v. Shapiro*, No. 20-2665, 2020 WL 3542331, at *3 (E.D. Pa. June 30, 2020) ("As there are no factual allegations of personal involvement by Shapiro, I cannot discern any legal basis for Shapiro's liability here, and the claims against him must be dismissed"); *Addlespurger v. Corbett*, 461 F. App'x 82, 86 (3d Cir. 2012) (affirming dismissal of "claims against former Attorney General Corbett in his individual capacity fail because [plaintiff] failed to allege any personal involvement in the purported violation of his rights").

The Complaint is devoid of fact-based allegations that Attorney General Josh Shapiro had any involvement in developing, executing, or enforcing the orders at issue. *See generally*, Doc. 1. The three isolated paragraphs in which the Attorney General is listed (see ¶¶13, 23, & 24), simply recite conclusions of law as to his responsibility. There are no facts anywhere in the Complaint that support these allegations. In the absence of such allegations, no personal involvement cannot be identified and relief cannot be granted.

## II.   **PLAINTIFFS CANNOT DEMONSTRATE THEY ARE LIKELY TO SUFFER IRREPABLE HARM IF RELIEF IS NOT GRANTED**

"Establishing a risk of irreparable harm is not enough." *ECRI v. McGraw-Hill, Inc.*, 809 F.2d 223, 226 (3d Cir. 1987). A plaintiff has the burden of proving a "clear showing of immediate irreparable injury." *Continental Group, Inc. v. Amoco*

*Chemicals Corp.,* 614 F.2d 351, 359 (3d Cir.1980). The "requisite feared injury or harm must be irreparable—not merely serious or substantial," and it "must be of a peculiar nature, so that compensation in money cannot atone for it." *Glasco v. Hills,* 558 F.2d 179, 181 (3d Cir. 1977). "[W]e have never upheld an injunction where the claimed injury constituted a loss of money, a loss capable of recoupment in a proper action at law." *ECRI,* 809 F.2d at 226. The "burden of showing irreparable injury 'is not an easy burden' to meet." *Moore v. Mann,* No. 3:CV-13-2771, 2014 WL 3893903, at *2 (M.D. Pa. Aug. 7, 2014).

While the loss of First Amendment rights can constitute irreparable injury in certain circumstances, "the assertion of First Amendment rights does not automatically require a finding of irreparable injury, thus entitling a plaintiff to a preliminary injunction if he shows a likelihood of success on the merits." *Hohe v. Casey*, 868 F.2d 69, 73 (3d. Cir. 1989). "Rather the plaintiff[s] must show "a chilling effect on free expression." *Id*. at 73 (citing *Dombrowski v. Pfiste*r, 380 U.S. 479, 487 (1965)).

Contrary to Plaintiffs' assertions, they have not been deprived of any freedom guaranteed by the First Amendment. The requirement that masks be worn is not ideological in nature, and the Commonwealth has a compelling interest in saving lives through preventative measures such as a mask. Plaintiffs are still free to speak,

assemble, and protest against masks. Because Plaintiffs have no clear right to relief on the merits, there is no *per se* irreparable harm.

Additionally, Plaintiffs have not demonstrated actual harm warranting an injunction. The Parker family's quarantine period was temporary and is over. Indeed, the terms of the contact tracing program and the quarantine are temporary in nature, only requiring a quarantine of fourteen days. Also, the masks do not restrict Plaintiffs' ability to go about their lives. At best, Plaintiffs complain about inconveniences imposed upon them by the Commonwealth's measures to spread disease. These inconveniences do not amount to irreparable harm, which must be significant and peculiar in nature.

In sum, Plaintiffs have not demonstrated any cognizable harm that surpasses the importance of protecting public health warranting the mask mandate and contact tracing program.

## III. THE BALANCE OF THE HARMS AND THE PUBLIC INTEREST WEIGH AGAINST A PRELIMINARY INJUNCTION

Even if Plaintiffs satisfy the first two elements of the analysis – and they do not – the Court must consider whether an injunction "would harm the [defendants] more than denying relief would harm the [plaintiffs]" and "whether granting relief would serve the public interest." *Ass'n of New Jersey Rifle & Pistol Clubs, Inc.*, 910 F.3d at 115. In each case, courts "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested

relief." *Amoco Production Co.,* 480 U.S., at 542, 107 S.Ct. 1396. "In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). Instantly, the equities weigh in favor of denying Plaintiffs' request for a preliminary injunction.

Masks and contact tracing save lives. Plaintiffs' minimal inconvenience caused by the contact tracing and mask mandates is outweighed by the public's right not to be infected with a deadly virus. The potential injury to the public that would result from enjoining the Commonwealth's life saving measures to stop the spread of an incurable, deadly and highly communicable disease outweighs Plaintiffs right to proceed without caution. Plaintiffs' request demonstrates a callous disregard for the dangers of this virus and the lives it has taken. Thousands of Pennsylvanians have died from the virus. Plaintiffs are willing to sacrifice more lives in their own selfish interest.

The Secretary's Orders were enacted for the sole purpose of protecting the lives of citizens of the Commonwealth and were issued in an effort to eliminate some of the more restrictive measures that were originally in place to combat the spread of COVID-19.   The issuance of the preliminary injunction Plaintiffs seek here will not merely harm the public, it will actively contribute to the spread of COVID-19, causing the unnecessary suffering and death of countless more Pennsylvanians.

## **CONCLUSION**

For the foregoing reasons, Defendants respectfully request that this Honorable

Court deny Plaintiffs' Motion for a Preliminary Injunction.

Respectfully submitted,

JOSH SHAPIRO
Attorney General

BY:   */s/ Keli M. Neary*

Office of Attorney General
15ᵗʰ Floor, Strawberry Square
Harrisburg, PA  17120

Date:  October 23, 2020

KELI M. NEARY
Executive Deputy Attorney General
Attorney ID 205178

*/s/ Karen M. Romano*

KAREN M. ROMANO
Chief Deputy Attorney General
Attorney ID 88848

*/s/ Nicole J. Boland*

NICOLE J. BOLAND
Deputy Attorney General
Attorney ID 314061

## **WORD COUNT CERTIFICATION**

I hereby certify that this brief contains 5744 words within the meaning of Local Rule 7.8(b)(2).  In making this certificate, I have relied on the word count of the word processing system used to prepare the brief.  *See* Doc. 15.

*/s/ Karen M. Romano*

KAREN M. ROMANO
Chief Deputy Attorney General

DATE:  October 23, 2020

## <u>CERTIFICATE OF SERVICE</u>

I, Karen M. Romano, Chief Deputy Attorney General, do hereby certify that I have this day served the foregoing Brief in Opposition to Plaintiffs' Motion for Preliminary Injunction, via ECF, on the following:

Andrea L. Shaw, Esquire
LAW OFFICE OF ANDREW H. SHAW, P.C.
2011 W. Trindle Road
Carlisle, PA  17013
andrea@ashawlaw.com


Robert J. Muise, Esquire
AMERICAN FREEDOM LAW CENTER
P.O. Box 131098
Ann Arbor, MI  48113
rmuise@americanfreedomlawcenter.org


*/s/ Karen M. Romano*
KAREN M. ROMANO
Chief Deputy Attorney General

DATE:  October 23, 2020